[No. F005279. Fifth Dist. Mar. 26, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES GREGORY WHITE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Thomas W. Perley, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

REID, J.*—

### STATEMENT OF THE CASE

Appellant was convicted by jury verdict of a single count of violation of Penal Code section 289, subdivision (a), penetration of the anal opening by a foreign object accomplished against the victim's will by force, violence, duress, menace, or fear of immediate and unlawful bodily injury for the purpose of sexual arousal, gratification or abuse. He was acquitted of a second count charging him with violation of Penal Code section 273a, subdivision (1), child endangerment. After his motion for a new trial was denied, appellant was sentenced to the aggravated term of eight years. He appeals contending (1) that the evidence of force, violence, duress, or menace within the contemplation of the statute was insufficient to support the verdict, (2) that the trial court erred in denying his motion for a new trial since the jury had been misled into believing that section 289 could be

---

*Assigned by the Chairperson of the Judicial Council.

violated without proof that appellant entertained a sexual intent, and (3) that a purported variance between the charging language in the information and the prosecution's theory at the time of trial deprived him of notice of the charges. We find these contentions to be without substantial merit and affirm the judgment.

## FACTS

Appellant, who was 20 years old at the time of trial, married Shelly White, age 19, in June 1984. At the time of the marriage, Shelly had a daughter named Nicole who was approximately 17 months old when the events giving rise to the charges against appellant occurred. Appellant was not Nicole's natural father.

In mid-October 1984, appellant and Shelly were suffering financial difficulties because of appellant's frequent job changes. These difficulties caused appellant to be "edgy" and "uptight" and to lose his temper easily. As a consequence, appellant and Shelly "fought a lot."

On October 15, 1984, appellant returned home from work around 5 p.m. At approximately 6:30 p.m. Shelly, who had been at home all day with Nicole, went to visit a friend leaving Nicole in appellant's care. The friend whom Shelly went to visit was not at home and Shelly returned to the apartment she and appellant shared around 8 p.m.

When she got home, Shelly found appellant lying naked under a blanket on the couch and Nicole in bed asleep. Appellant "kind of broke down and said that he felt bad because he spanked [Nicole] too hard" because "she had smeared her do-do all over the place." "He kept on saying he was sorry and just acted overly guilty" which caused Shelly to suspect that appellant had something else on his mind. However, appellant denied that he had anything on his mind except the spanking.

After talking to appellant, Shelly went upstairs to check on Nicole and then returned to the downstairs room of the apartment. Appellant insisted that Shelly remove Nicole's clothes and check her, but Shelly responded that there was no need to do that simply because appellant may have spanked her too hard. Appellant then volunteered that he had masturbated while Shelly had been gone and told her that no one else had visited the apartment in her absence.

On the following morning when Shelly changed Nicole's diapers, she noticed bruising on Nicole's buttocks and that her anus was stretched and puckered. These injuries had not been present prior to her having left home

the previous evening to see a friend and she had never observed any similar trauma on Nicole before. When appellant got home that evening, Shelly asked him how he spanked Nicole to produce the kind of bruises she had observed, and appellant demonstrated that he had lifted Nicole's legs while she was lying on her back and spanked her on the bottom. Shelly did nothing further at the time because she "wanted to believe him."

On the morning of October 17, 1984, Shelly observed that the bruising on Nicole's buttocks was less noticeable but that the trauma to the anus was quite apparent. As a result, Shelly left appellant a note "telling him [she] was leaving him; that [she] knew what happened." Upon finding the note, appellant went to the home of Carolyn Walker, Shelly's mother, and asked her to come over to the apartment and talk to Shelly. He was "very emotionally upset" and told Mrs. Walker that Shelly "had accused him of molesting Nicole." Mrs. Walker agreed to come over a short time later and see what she could do.

After Mrs. Walker arrived at appellant's apartment and inspected Nicole in the presence of Shelly and appellant, Nicole was taken to the hospital emergency room to be examined by a physician. Dr. Mary Nolan was the emergency room physician who examined Nicole and she observed extensive bruising across the buttocks, around the anal area and in the perineum. The bruises were all purplish and appeared to be from one to three days old. The sphincter muscle tone of the anus "appeared rather lax." Dr. Nolan concluded that the injuries were "consistent with some . . . forceful penetration of the anus."

Appellant was arrested on October 18, 1984, and gave a recorded statement to a Kern County Sheriff's investigator in which he admitted having become upset and spanking Nicole with his hand on the buttocks, striking her anus. However, he specifically denied either intentionally or accidentally penetrating Nicole's anus with his finger.

Dr. Bruce Woodling, a specialist in the field of child sexual abuse, examined Nicole on November 30, 1984, more than six weeks after Nicole suffered the injuries to her buttocks and anus. Before conducting his examination, Dr. Woodling reviewed pictures taken of Nicole on October 17, the doctor's report and the police reports. He determined that Nicole had sustained two sets of injuries, one from forced penetration into the rectum and the other by an impact on the buttocks and posterior thighs. The forced penetration in his opinion "caused intense pain" and the anal injury could not have occurred as a result of a spanking no matter how forceful. "The penetration was with a rigid object" and could have been "a finger or fingers, penile type object or erected penis." While he could not be more

specific than that, Dr. Woodling concluded that whatever penetrated Nicole's anus "was with significant force."

Appellant testified in his own defense. According to him, Nicole needed her diapers changed and he took her upstairs to do so. Finding no clean diapers, he went downstairs and then returned to find that Nicole had made a mess. He became upset, lifted Nicole's legs and spanked her several times on the bottom. He then cleaned Nicole, dressed her for bed, and returned with her to the downstairs room of the apartment. Appellant put Nicole to bed about 8 p.m. and then related what had occurred to Shelly when she returned a little later. He denied that he had told Shelly that he had masturbated while she was gone and specifically denied that he ever placed any object into Nicole's anus or that he had any sexual interest when he spanked Nicole.

## DISCUSSION

## I.

### SUFFICIENCY OF THE EVIDENCE OF FORCE, VIOLENCE, DURESS, OR MENACE.

Subdivision (a) of section 289 of the Penal Code provides: "Every person who causes the penetration, however slight, of the genital or anal openings of another person, by any foreign object, substance, instrument, or device, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison for three, six or eight years."

Appellant contends that the record fails to support by substantial evidence the element of "force, violence, duress, or menace" necessary for a conviction under Penal Code section 289, subdivision (a). "The essence of his argument is that the People must prove that the defendant used force, violence, duress, or menace in order to overcome the victim's will, and since the victim in this case was, because of her tender years, incapable of understanding the nature of the act committed against her, she was thus incapable of having the act accomplished against her 'will'."

Preliminarily, it is to be noted that appellant's interpretation of the statute renders it inapplicable in any case where the victim is a child of insufficient maturity either to give or to withhold consent. In justification for this approach, appellant contends as follows: "Subdivisions (a) and (b) of section

289 make a distinction between those acts accomplished against a person's will and those acts which are committed against a person incapable of giving legal consent. Subdivision (a), which is a felony *per se,* requires proof that the 'act was accomplished against the victim's will by means of force, . . .' Under established rules, the force must be substantially greater that [*sic*] that necessary to accomplish the act itself. [Citations.] Subdivision (b) of section 289, on the other hand, does not require use of force or threat of bodily injury. Rather, under that subdivision, a person commits an offense when the proscribed act is committed at a time the victim is incapable of consenting and when the defendant knew or should have known of such condition. Subdivision (b) is a 'wobbler' in that it may be treated as either a felony or a misdemeanor.[1] [¶] This distinction evidences an intent on the part of the Legislature to treat those acts accomplished against a victim's will more seriously than those acts committed against a victim who is incapable of giving legal consent, i.e., of expressing a 'will' in opposition to the commission of the acts. Although reasonable minds may question the wisdom of this distinction, the courts are nevertheless obliged to abide by it."

■ Subdivision (b) of section 289 clearly applies to those persons who, but for lunacy or other unsoundness of mind, could give "legal consent" to a sexual penetration of the type contemplated by the statute. A small child of normal mental development for its age is not a person afflicted with "lunacy or other unsoundness of mind" within the meaning of subdivision (b) notwithstanding a lack of capacity to understand, nor would the existence of the intellectual capacity in an older child of less than legal age to understand and agree to a sexual act make possible a "legal consent." Clearly, subdivision (b) of section 289 does not apply to children regardless of whether in fact the child is capable of an exercise of will in regard to the proscribed acts. ■ The question that remains is whether the Legislature intended by its choice of language in subdivision (a) to make the protections of the statute available only to children of sufficient age and understanding to have their wills overcome by forceful means. We conclude that it did not.

The fact that subdivision (b) of section 289 specifically addresses the problem of those persons who lack mental capacity to give legal consent

[1]Penal Code section 289, subdivision (b), provided at the time this case arose: "Every person who causes the penetration, however, slight, of the genital or anal openings of another person by any foreign object, substance, instrument, or device when the victim is at the time incapable through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent, and this is known or reasonably should be known to the person committing the act for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year."

does not foreclose the possibility that subdivision (a) may be applicable to persons afflicted with lunacy or other unsoundness of mind if actual force is used. The critical question thus becomes what definition should be given of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" as used in the statute.

It is appellant's position that "in a prosecution under Penal Code section 289, subdivision (a), the prosecution must prove that the defendant accomplished the acts either by using force as a method to overcome the victim's will or to gain the victim's 'consent,' or by psychological coercion to get the victim to do something against his or her will." In support of this contention, he relies primarily on *People* v. *Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582] and on *People* v. *Kusumoto* (1985) 169 Cal.App.3d 487 [215 Cal.Rptr. 347]. This reliance is seriously misplaced.

In *People* v. *Cicero, supra,* 157 Cal.App.3d 465, the court was faced with the task of interpreting the word "force," as that term is used in subdivision (b) of Penal Code section 288, in a case in which no injury occurred to the child victims.[2] In doing so, the court analogized to the law of rape and made the following statements relied upon by appellant: ". . . Accordingly, both logic and fairness compel the conclusion that 'force' in subdivision (b) must reasonably be given the same established meaning it has achieved in the law of rape: 'force' should be defined as a method of obtaining a child's participation in a lewd act in violation of a child's will and not exclusively as a means of causing physical harm to the child. . . . [¶] . . . [S]ubdivision (b) also makes criminal a lewd act committed by use of 'duress, menace, or threat of great bodily harm.' . . . These words are ordinarily used to demonstrate that someone has used some form of psychological coercion to get someone else to do something they don't want to do, i.e., something against their will. Consequently, if the concept of violation of will is removed from these words, they are left, like shells on a beach, without substance." (*Id.,* at pp. 475-477.)

As noted, the court in *Cicero* was concerned with defining "force" in a context in which no physical injury or serious physical discomfort was suffered by the victims, and it is in this sense that the *Cicero* court used the quoted language "and not exclusively as a means of causing physical harm to the child." What appellant fails to note is that the court prefaced its discussion with the statement: ". . . We presume all would agree that one who inflicts physical harm on a child in the commission of a lewd act is properly convicted of a violation of subdivision (b) 'by use of force.' Here,

---

[2]Subdivision (b) of Penal Code section 288 at the time in question made punishable lewd acts on children "by use of force, violence, duress, menace, or threat of great bodily harm."

however, there is no dispute that defendant did no physical harm to either child. Is physical harm to the child an essential ingredient of 'force' in subdivision (b)?" (*Id.*, at p. 474.)

In its final answer to the question it had before it, the *Cicero* court concluded: "Where a defendant uses physical force to commit a lewd act upon a child under the age of 14, and the child suffers physical harm as a consequence, the defendant has committed a lewd act 'by use of force' under subdivision (b). Consent is no defense. Where no physical harm to the child has occurred, the prosecution has the burden of proving (1) that the defendant used physical force substantially different from or substantially in excess of that required for the lewd act and (2) that the lewd act was accomplished against the will of the victim. The prosecution may satisfy its burden on the latter issue by proving the physical force was such as would reasonably demonstrate that the lewd act was undertaken against the will of the victim under all circumstances, including the ages and sizes of the defendant and the victim. The prosecution need not prove that the victim resisted the lewd act. Where no physical harm to the victim has occurred, it is an affirmative defense that the victim knowingly consented to the lewd act." (*Id.*, at pp. 484-485.)

Applying the definition of "by use of force" in Penal Code section 288, subdivision (b), as set forth in *Cicero* to a violation of Penal Code section 289, subdivision (a), Drs. Nolan and Woodling clearly described physical injuries that were inflicted upon Nicole and that indicated a use of "force" within the statutory prohibition.

*People* v. *Kusumoto, supra,* 169 Cal.App.3d 487, cited by appellant, likewise fails to support his position in this case. In *Kusumoto,* the defendant had on two occasions inserted his finger into the vagina of the 13-year-old victim while she was asleep, but no force was used except that required to perpetrate the act, and no physical harm resulted. In concluding that the "force" required to sustain a conviction under Penal Code section 289, subdivision (a), was not shown by the evidence, the court stated: ". . . By including section 289(a) among the crimes which involve 'an act of violence,' the Legislature has strongly indicated it views the concept of 'force' in that section to mean something qualitatively different than merely the victim's lack of consent. . . . [¶] In the final analysis we have no question here that the defendant perpetrated an act to which the victim did not consent. But given the entire statutory scheme, the requirement of 'force' in section 289(a) simply cannot be stretched to encompass the type of conduct involved in this case, where the victim was penetrated while asleep and where the victim's will was not overcome by any physical force substan-

tially different from or greater than that necessary to accomplish the act itself. . . ." (*Id.*, at pp. 493-494.)

Nowhere in the *Kusumoto* opinion is it suggested that a definition of "force" consistent with that adopted by the court in *Cicero* would not be appropriate in construing that term for Penal Code section 289, subdivision (a), purposes. Nowhere in *Kusumoto* is it stated or implied that physical force that results in physical injury is not sufficient force to satisfy the statute regardless of whether the victim is able or unable to give consent. Instead, by noting that the Legislature included section 289, subdivision (a), among the crimes which involve "an act of violence," the court gives support for an extension of the *Cicero* definition of "force" to cases arising under the section where the victim is, because of immaturity, unconsciousness or unsoundness of mind, incapable of consenting to the act of genital or anal penetration.

Notwithstanding that "force" within the meaning of the statute may have been used, appellant still asserts that Nicole's inability to understand the nature of the act committed against her made her "incapable of having the act accomplished against her will." Such an argument is wholly without merit. Penal Code section 261.6 provides: "In prosecutions under Section 261, 286, 288a, or 289, in which consent is at issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

Necessarily, where, as here, it is claimed that an act is against the will of a person, "consent is at issue." Here, Nicole was incapable of "positive cooperation in act or attitude pursuant to an exercise of free will" and was unable to, and did not, "act freely and voluntarily" with "knowledge of the nature of the act or transaction involved." In such a case, the act is as much against the victim's will as if the victim were capable of a free, voluntary and knowledgeable election between alternatives and was prevented from the exercise of that choice by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury." And where the proscribed act is committed against the will of a person who is incapable of consent and is accomplished by physical force which results in physical injury to the victim, the statutory requirements "against the will" and "use of force" are fully satisfied.

The evidence we have earlier described clearly shows that the force used upon Nicole was substantially in excess of that required to effect a simple penetration of the anus with a finger or similar object, and that the force used resulted in substantial physical injury and intense pain. We conclude,

therefore, that the evidence was sufficient to support appellant's conviction of a violation of Penal Code section 289, subdivision (a).

## II.

### THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION FOR A NEW TRIAL.

■ Prior to pronouncement of judgment, appellant moved for a new trial on the ground that the verdict was contrary to the law and the evidence. (Pen. Code, § 1181, subds. 6 and 7.) The principal arguments advanced by him in support of the motion were: (1) Penal Code section 289, subdivision (a), requires that the proscribed act be motivated or accomplished by some kind of sexual intent; (2) the evidence was insufficient as a matter of law to prove that appellant's "intent was to gain sexual arousal or gratification or to subject the victim to *sexual abuse or sexual mistreatment*;" and (3) because of the court's instructions, the prosecutor's argument and the form of verdict given to the jury, "the jury was misled into believing that section 289 could be violated without proof that the defendant entertained a sexual intent when committing the proscribed acts." These arguments were rejected by the trial court and the motion was denied. Appellant now contends that the denial of his new trial motion was an abuse of discretion which requires that his conviction be reversed.

In the course of his argument to the jury, appellant's trial counsel argued: "The defendant was angry; the defendant was frustrated. If you find at the time he was changing Nicole's diaper he became frustrated, he became angry, he wiped her too hard or he stuck his finger in her anus while cleaning her because he was frustrated, angry, but not as the law requires, for the specific intent for his own sexual gratification or for sexual arousal or for abuse, then I submit to you . . . that element of the crime has not been proven. [¶] What has been proven is penetration, but something more is required under the crime. In fact, the specific intent is required and the prosecution again must prove that element beyond a reasonable doubt."

In response to the foregoing argument of appellant's counsel, the prosecutor argued in rebuttal: ". . . He was abusing her. That is clear from what happened to her. [¶] That was his intent. Whether he was angry or not, that was his intent. That is why he stuck his fingers inside her, to abuse her, to cause her pain, and Dr. Woodling told you he certainly did that. . . . [¶] His specific intent can be proved by things other than a statement by him and in this case specific intent is proved by the fact he did abuse her. He spanked her. We have force[d] penetration and that tells us his intent. [¶] He wanted to hurt her. What else? He intended to forcibly penetrate the

anus of a 17 month old baby. What else could his intent be when she was screaming?''

Appellant contends that the quoted portions of the prosecutor's argument constitute a misstatement of the law which, coupled with a lack of specific direction from the court in its charge to the jury, and the deletion of the word "sexual" from the verdict forms, misled the jury.

In his charge to the jury, the trial judge instructed on the law pertaining to a violation of Penal Code section 289, subdivision (a), in the language of CALJIC No. 10.60 which sets forth as one of the elements of the offense "4. That the penetration was done with the purpose and specific intent to cause sexual gratification, arousal or abuse." It also instructed in the language of CALJIC No. 3.31 which tells the jury that "there must exist a union or joint operation of" the proscribed act and the requisite specific intent. These instructions were each requested by both the prosecution and the defense; neither side requested any other or further instructions concerning the requisite mental state or intention.

The verdict form given to the jury which set forth the jury's finding of appellant's guilt read in pertinent part as follows: "We, the Jury, empaneled to try the above entitled cause, find the defendant, JAMES GREGORY WHITE, guilty of Felony, to wit: Penetration by Force of the Anal Opening by a Foreign Object, in violation of Section 289(a) of the Penal Code, as charged in the first count of the information." The verdict form originally read "Sexual Penetration," but the word "sexual" was deleted upon a request by the prosecution. Although appellant's counsel stated that he accepted the verdict form in its original condition, when asked by the court if it was alright to black out "sexual," he responded "It is alright to black it out."

In support of his contention that the prosecution "had to establish beyond a reasonable doubt that appellant's conduct was sexually motivated," appellant argues: "The word *sexual* immediately precedes and qualifies the words 'arousal, gratification or abuse.' Under the rule as stated by this court in *People* v. *Hardin* (1983) 149 Cal.App.3d 994, at page 1000, the qualifying or modifying word 'sexual' must be read to qualify the word 'abuse.' Had the Legislature intended a different interpretation, then it could have, and indeed should have, worded the statute to read more akin to: 'for the purpose of abuse or for the purpose of sexual arousal or gratification.' The Legislative intent to make section 289 define a sexually motivated offense thus appears evident." (Fn. omitted.)

In response to appellant's argument, respondent asserts: "While appellant's interpretation of subdivision (a) is grammatically correct, the conclusion he reaches on the basis of this interpretation is flawed. Under subdivision (a) the penetration of the anus must be for sexual arousal, sexual gratification *or* sexual abuse. The People's theory in this case was that appellant's purpose in assaulting Nicole was the latter. To 'abuse' someone is to hurt them by treating them badly, or to cause pain or injury through mistreatment. When such mistreatment is directed to a victim's sexual or 'private' parts, the resulting conduct would certainly be considered sexual abuse.

"Appellant's argument that a 'sexually motivated intent' is required under subdivision (a) interprets the section too narrowly. The meaning appellant implies is covered by the two other purposes mentioned in the statute, sexual arousal and sexual gratification. Indeed, appellant may not have had either of these 'sexually motivated intents' and he still would have violated the subdivision if his intent was to hurt Nicole sexually, i.e., in a sexual or 'private' area of her body. The evidence of the forcefulness of the penetration, and its location, certainly provides ample support for the jury's verdict.

"Respondent's position is, essentially, that abuse or mistreatment in the manner described in subdivision (a) is, by definition, *sexual* abuse simply because of the body parts effected [*sic*], where the intent is in fact to 'abuse,' i.e., to hurt, cause pain to or injure. Surely there are many examples of sexual penetration of others, even of small children, which would not violate the statute because they are not done to arouse, gratify *or abuse*. These would include insertion of a thermometer or a suppository or other medicine. Since these penetrations are not for any proscribed purpose they are not in violation of subdivision (a). But when a penetration is accomplished for the purpose of causing pain, injury or discomfort, it becomes sexual abuse, even though the perpetrator may not necessarily achieve any sexual arousal or gratification whatsoever." (Fn. omitted.)

We are persuaded that respondent's view of the law is correct and that it is the only interpretation of "sexual abuse" that is reasonable. Appellant has been unable both in briefs and at oral argument to suggest what kind of sexual passion, lust or lascivious intent could conceivably be involved in sexual abuse other than that encompassed in the terms "sexual arousal" and "sexual gratification." By using the disjunctive *or* to separate "sexual abuse" from "sexual arousal" or "sexual gratification," the Legislature clearly did not intend a redundancy. The term "abuse" imports an intent to injure or hurt badly, not lewdness. As contended by respondent, it is the nature of the act that renders the abuse "sexual" and not the motivations

of the perpetrator. Accordingly, we find that the prosecutor's argument did not misstate the law, the instructions given by the court were correct and adequate for the case, and that the verdict form was proper. The motion for a new trial was properly denied.

### III.*

APPELLANT'S CLAIM TO LACK OF NOTICE OF THE CHARGES BECAUSE OF A PURPORTED VARIANCE BETWEEN THE CHARGING LANGUAGE IN THE INFORMATION AND THE PROSECUTION'S THEORY AT THE TIME OF TRIAL.

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 26, 1986.

*See footnote, *ante,* page 193.