Filed 6/18/26  P. v. Cota CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCO ANTONIO COTA, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B339067<br>(Super. Ct. No. 21F-08772)<br>(San Luis Obispo County) |

Marco Antonio Cota, Jr., appeals from the judgment after a jury convicted him of the first degree murder of Rick Lee Fowler (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a); count 1), and sexual penetration of human remains (Health & Saf. Code, § 7052, subd. (a); count 2).  In a bifurcated proceeding, the trial court found Cota had suffered three prior serious felony convictions ("nickel priors") (§ 667, subd. (a)(1)) and three "strike" offenses pursuant to the "Three Strikes" law (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)).

---

[1] All undesignated statutory references are to the Penal Code.

The trial court sentenced Cota to 75 years to life for count 1 and a determinate prison term of 21 years (six years for count 2 plus three "nickel" priors). The court ordered Cota to register as a sex offender (§ 290.006).

Cota contends: (1) substantial evidence does not support first degree murder, (2) the trial court erred when it failed to instruct the jury regarding specific intent for count 2, (3) the trial court abused its discretion when it imposed the registration requirement, and (4) the sentence for count 2 should be stayed pursuant to section 654. We reverse count 2 and strike the registration requirement, and in all other respects affirm.

FACTUAL AND PROCEDURAL HISTORY

Police officers found Fowler dead in the bottom of a creek bed near some homeless camps. His body was lying face down with his jacket pulled up, his pants pulled down, and his buttocks exposed. He had head injuries significant enough to distort the shape of his head. Sticks were protruding from his eyes, neck, and anus. A large rock with blood on it was found nearby.

Police saw Cota standing nearby. His hands were red and swollen with a fresh abrasion on his left hand.

An autopsy determined that Fowler's skull was fractured in several places with bleeding on his brain. He had broken ribs and a ruptured spleen. The stick that penetrated his anus went through his rectum and into his pelvis. The cause of death was blunt head and neck trauma that was "the result of multiple severe blows . . . strong enough to crush the skull, and break ribs." The head injuries were caused by being struck with an object such as a rock or hitting his head on a hard surface.

A pathologist concluded that Fowler was alive when the stick was put into his neck, based on the large amount of bleeding in that area. But the stick in the rectum was inserted after death

2

or during the final stages of the dying process.

Cota's DNA was found on the stick extracted from Fowler's rectum.  Fowler's blood was found on Cota's shirt and jeans.

*Cota's statements to police*

Cota told police he had been sleeping at the campsite for several days.  A man known as Cowboy had warned him about a "short dude" who was "a real tussle" and would "stab the fuck out of you."

Fowler approached Cota two days before the murder.  Cota immediately knew Fowler was the person Cowboy had warned him about.  Fowler told Cota, "Hey dude, don't go back there[.] Something's happening back there.  They don't want you back there."  But Cota just wanted a place to sleep, and believed "[n]obody's gonna push me out."  Cota "knew [he] was going to run into [Fowler] again" and "knew that he was going to be a problem."

Cota told police, "I'm angry because of what the fuckin' system is doing to me."  He said that "this system is going to make me hurt somebody or kill somebody."  He said, "[P]eople are being put in my path for me to fuck up and to do away with myself."  He also said, "Somebody put [Fowler] in my path."

The night before the murder, Cota saw a 16-year-old girl named Hope in another tent.  She was naked and crying.  Cota had heard that "some creep was walking around" the area.  Cota believed that "someone was trying to . . . take advantage" of Hope.

Saturday evening, Cota returned to the camp to sleep. Fowler said, "Hey man, I thought I told you not to stay—not to come back here anymore."  Cota told police that Fowler then attacked him, and "the fight was on."

Cota said that during the fight, Fowler said, "all right,

3

man," and Cota knew Fowler was about to tell him "who had put him in my path and who put him up to it." But Cota was angry and it was "too . . . late for that." Cota "knew [Fowler] wasn't going to stop." Cota decided, "There's only one way it ends, I die or he dies."

Cota said he put sticks in the victim to "[s]how motherfuckers what evil looks like. You guys wanted to see it." He said, "You guys are going to see it, what ugly is, what this system is doing to me." He said he put sticks in Fowler's eyes "[f]or whatever he's seen in his life" and "because of the evil that he's seen." Police noticed that Cota had a scar on his neck, and he agreed he "struck [Fowler] in the neck because that's what happened to [Cota] back in the day." Cota added he was "just angry." He punched Fowler "a lot of times," so much that his own hand hurt. Cota said, "I had his hands around his neck[,] and I choked him out with his own hands." He denied smashing Fowler's skull with a rock.

When asked about the stick in the victim's rectum, Cota said, "Dude, because he was telling me to. [']Fuck you. Fuck you.' Alright motherfucker, now you've been fucked." He inserted the stick by pulling Fowler's pants down. Fowler was "already dead."

Cota said that after the death he was done "raging" and was "just cool." He thought he probably smoked some meth to "relax." He went to a coffee shop in the morning, waited outside until it opened, got a cup of coffee, and then went "cruising downtown."

*Sentencing*

At sentencing, Cota expressed his displeasure with the sex registration requirement and stated Fowler "was sexually molesting a 16 year old girl . . . back there."

4

DISCUSSION

*Substantial evidence of premeditated murder*

Cota does not dispute that he killed Fowler. But he contends the first degree finding is not supported by substantial evidence. We disagree.

"[W]e review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. . . . '[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*People v. Elliott* (2012) 53 Cal.4th 535, 585.) We must affirm the judgment if it is supported by substantial evidence, which " 'includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Clark* (2011) 52 Cal.4th 856, 942–943.) The substantial evidence test also applies to the intent element of the crime. (*Id.* at pp. 945–946.)

A willful, deliberate, and premeditated murder committed with intent to kill is murder of the first degree. (§ 189, subd. (a); *People v. Sanchez* (2001) 26 Cal.4th 834, 849.) " 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time.' " (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)

In *People v. Anderson* (1968) 70 Cal.2d 15, 26–27, as summarized in *People v. Brooks* (2017) 3 Cal.5th 1, 58–59, our Supreme Court identified the type of evidence it " ' "typically" ' " found sufficient to sustain a finding of premeditation and deliberation: "(1) evidence of planning activity prior to the killing,

5

(2) evidence of the defendant's prior relationship with the victim from which the jury could reasonably infer a motive to kill, and (3) evidence that the manner in which the defendant carried out the killing 'was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason." ' "

The evidence here showed that Cota and Fowler had a confrontation days before the murder in which Fowler told Cota not to return to the homeless camp. Cota immediately concluded that Fowler was the dangerous person Cowboy had described. Cota believed he was "going to run into him again," and he "was going to be a problem." The jury could conclude that during the period between that initial confrontation and the murder, Cota had "ample time to reflect upon" his actions, and that he deliberated about how to eliminate the person he thought had been put in his "path" to harm him. (*People v. Solomon* (2010) 49 Cal.4th 792, 814.)

The multiple steps Cota took to kill Fowler, including hitting with his fists, choking him, smashing his skull with a rock, and putting sticks into him, also "suggests defendant had ample opportunity to consider the deadly consequences of his actions." (*People v. Stitely* (2005) 35 Cal.4th 514, 544.) "[T]he use of multiple weapons . . . reflected deliberation and premeditation rather than the result of a rash, impulsive act." (*People v. Combs* (2004) 34 Cal.4th 821, 851.)

Cota's statements supported the conclusion that jamming sticks into Fowler's eyes, neck, and rectum was " 'for a "reason" ' " (*People v. Brooks*, *supra*, 3 Cal.5th at p. 59): to send a message about Cota's perceived mistreatment by "the system." "[T]he law does not require that a first degree murderer have a 'rational'

6

motive for killing. Anger at the way the victim talked to him [citation] or any motive, 'shallow and distorted but, to the perpetrator, genuine' may be sufficient." (*People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102.)

Finally, Cota's actions after the murder—smoking methamphetamine to "relax," followed by waiting for a coffee shop to open and "cruising downtown"—were evidence he "had desired that outcome" of killing Fowler and support premeditation and deliberation. (*People v. Williams* (2018) 23 Cal.App.5th 396, 411.) We conclude that substantial evidence supported the verdict of first degree murder.

*Jury instructions for penetration of human remains*

Cota contends the trial court prejudicially erred by not instructing the jury on the specific intent element for count 2, sexual penetration of human remains. We agree.

Trial courts have a sua sponte duty to instruct on every element of charged offenses. (*People v. Mil* (2012) 53 Cal.4th 400, 409.) "[I]nstructions completely removing the issue of intent from the jury's consideration may constitute a denial of federal due process principles." (*People v. Lee* (1987) 43 Cal.3d 666, 673, italics omitted.) "[W]e review independently the legal adequacy of a jury instruction." (*People v. Cole* (2004) 33 Cal.4th 1158, 1211.)

Health and Safety Code section 7052, subdivision (a) prohibits committing "an act of sexual penetration on . . . remains known to be human." " 'Sexual penetration' " is defined as including "the unlawful penetration of the . . . anus, however slight, by any part of a person's body or other object . . . *for the purpose of sexual arousal, gratification, or abuse*." (Health & Saf. Code, § 7052, subd. (b)(1), italics added.)

The court instructed the jury that count 2 required "general

criminal intent," which is established when the defendant "intentionally does a prohibited act." (CALCRIM No. 252.) This instruction was erroneous. Sexual penetration is a specific intent crime because it "require[s] the act of penetration 'to be done with the intent to gain sexual arousal or gratification or to inflict abuse on the victim.' " (*People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167 [construing equivalent language of § 289, subd. (k)(1)].)

In addition, the jury instruction defining Health and Safety Code section 7052 was incomplete. It included the statutory language for the physical actions required for "sexual penetration"[2] but did not include the requirement that the penetration be "for the purpose of sexual arousal, gratification, or abuse." (Health & Saf. Code, § 7052, subd. (b)(1).) Nor did the prosecutor's closing argument acknowledge the intent requirement for that count. Specific intent is not presumed from the doing of the unlawful act. (Evid. Code, § 668.)

The Attorney General correctly concedes the instructions were erroneous. But we disagree with the Attorney General's contention that the error was harmless.

We assess the prejudicial effect of the failure to instruct regarding the required element of mental state pursuant to *Chapman v. California* (1967) 386 U.S. 18, 24. (*People v. Mil, supra*, 53 Cal.4th at p. 409.) We must reverse unless "it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict." (*Id*. at p. 417.) "[I]nstructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt

---

2 The jury instructions did not give the option of the other means of violating Health and Safety Code section 7052, i.e., "willfully mutilates, disinters, removes from the place of interment, . . . or has sexual contact with" human remains.

that the omitted element was uncontested and supported by overwhelming evidence,' " but not where " 'the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid*.)

We cannot conclude beyond a reasonable doubt that the evidence of sexual arousal, sexual gratification, or sexual abuse was either uncontested or overwhelming. " 'Sexual' is commonly understood to mean 'of or relating to the sphere of behavior associated with libidinal gratification.' " (*United States v. Mateen* (6th Cir. 2015) 806 F.3d 857, 861, quoting Webster's 3d New Internat. Dict. (1981).) Cota explained that Fowler called him by an ethnic epithet and said "[f]uck you," which a jury could reasonably interpret as "a statement or expression of hostility, confrontation, or rejection" rather than a sexual reference. (Oxford English Dict. Online (3d. ed. 2026).) A jury could also reasonably interpret Cota's response that "now you've been fucked" to mean "[t]o damage, ruin, . . . destroy, [or] put an end to" rather than sexual intercourse or sexual arousal or gratification. (*Ibid*.)

Nor is there overwhelming evidence of intent to sexually abuse to conclude the instructional error here is harmless beyond a reasonable doubt. "Abuse" has been defined as "the mistreatment of the person 'in a harmful, injurious, or offensive way,' " including "causing emotional harm by the use of offensive conduct . . . for example, conduct intended to insult or humiliate a person." (*In re Shannon T.* (2006) 144 Cal.App.4th 618, 622 [sexual battery].) In the context of sexual penetration of a living person, " '[t]o "abuse" someone is to hurt them by treating them badly, or to cause pain or injury through mistreatment.' " (*People v. White* (1986) 179 Cal.App.3d 193, 205 (*White*).)

*White* involved a 17-month-old victim and the defendant's

9

conduct caused "bruising on [the victim's] buttocks and . . . her anus was stretched and puckered." (*White*, *supra*, 179 Cal.App.3d at p. 196.) Our colleagues in the Fifth District concluded that when " 'such mistreatment is directed to a victim's sexual or "private" parts, the resulting conduct would certainly be considered sexual abuse.' " (*Id*. at p. 205.) They reasoned that this is true " 'even though the perpetrator may not necessarily achieve any sexual arousal or gratification whatsoever.' " (*Ibid*.) "The term 'abuse' imports an intent to injure or hurt badly, not lewdness. . . . [I]t is the nature of the act that renders the abuse 'sexual' and not the motivations of the perpetrator." (*Id*. at pp. 205–206; accord, *People v. McCoy* (2013) 215 Cal.App.4th 1510, 1541.)

While a body moments after death may not be able to feel pain or humiliation, the Legislature acknowledged it is possible to sexually abuse a deceased victim by including "abuse" in the definition of sexual penetration of human remains. (Health & Saf. Code, § 7052, subd. (b)(1).) The legislation was enacted to avoid "disrespect for the deceased" and the suffering of family members. (Assem. Floor Analysis, 3d reading analysis of Assem. Bill No. 1493 (2003–2004 Reg. Sess.) as amended April 29, 2003, p. 2.)

We have found no case that defines sexual abuse of a deceased victim under Health and Safety Code section 7052, subdivision (b)(1). If properly instructed, the jury *could have* found that Cota specifically intended to sexually abuse Fowler by "injur[ing] or hurt[ing him] badly." (*White*, *supra*, 179 Cal.App.3d at p. 205.) But alternatively, the jury could conclude that Cota's insertion of the stick in Fowler's anus was not based on an intent to sexually abuse him. Given Cota's statements to police about his perceived mistreatment by the "system" and

10

because sticks were also protruding from Fowler's eyes and neck, the jury could reasonably conclude Cota's conduct was intended only to send a message to others about "the system." Or the jury could have concluded that Cota was "mentally unable to form the specific intent for some reason, e.g., mental illness." (*People v. Ngo* (2014) 225 Cal.App.4th 126, 163 [sexual penetration under § 289].)

In our view, the instructional error is not harmless because "the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (*Neder v. United States* (1999) 527 U.S. 1, 19.) Accordingly, we reverse the conviction for count 2. Because sufficient evidence was presented that could support a guilty verdict if the jury were properly instructed, the People may retry Cota for count 2 on remand. (*People v. Hatch* (2000) 22 Cal.4th 260, 271–272.)

*Sex offender registration*

Cota contends substantial evidence did not support the trial court's order that he register as a sex offender. We agree.

Section 290.006 requires a defendant to register as a sex offender "if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006, subd. (a).) Unlike Health and Safety Code section 7052, section 290.006 does not include sexual "abuse."

We review imposition of a registration requirement pursuant to section 290.006 for abuse of discretion. (*People v. Picklesimer* (2010) 48 Cal.4th 330, 335.) " 'The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' [Citation.] A trial court abuses its discretion when its factual

11

findings are not supported by the evidence." (*People v. Thai* (2023) 90 Cal.App.5th 427, 433.)

Because we reverse count 2, we must determine whether there was substantial evidence that the murder was sexually motivated. The prosecutor did not assert that theory, and there is no evidence to support it. Cota's belief that "someone was trying to . . . take advantage" of Hope, and his claim at sentencing that Fowler had sexually molested a 16-year-old girl, are not evidence that Cota committed the murder "as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006, subd. (a).)

Nor does Cota's conduct after the murder justify registration. The trial court found that putting a stick in the victim's rectum was circumstantial evidence of sexual compulsion and raised a reasonable inference of sexual gratification. The court commented on the fact that Cota pulled down the victim's pants, placed the stick in the victim's rectum, and left him exposed. The court stated that the victim's genitalia and anus were exposed, but neither the photographs nor other evidence establish that. The trial court also relied on Cota's Static-99R score of 4, which indicates a 9.2 percent chance of reoffending. But that is not evidence that Cota committed the murder because of "sexual compulsion" or for "sexual gratification."

"Compulsion" has been defined as "an irresistible persistent impulse to perform an act." (Merriam-Webster Dict. Online (2026); see *People v. Jackson* (1984) 152 Cal.App.3d 961, 965.) There is no evidence here that either the murder or Cota's act of penetration were the product of an irresistible or persistent sexual impulse. (Cf. *People v. Eastman* (2018) 26 Cal.App.5th 638, 643 [sexual compulsion supported by defendant repeatedly photographing under women's skirts].) Nor is there evidence that

Cota was motivated by a desire for sexual gratification. (See *United States v. Mateen*, *supra*, 806 F.3d at p. 861 [sexual crime if committed for " 'libidinal gratification' "].) Accordingly, the registration requirement is stricken. If following remand Cota is convicted of count 2, the court may reconsider the registration requirement based on the evidence before it.

*Section 654 stay*

Based on our reversal of count 2, it is unnecessary to determine whether the sentence for that count in addition to the sentence for murder violated the multiple punishment prohibition of section 654.

DISPOSITION

Appellant's conviction on count 2 is reversed. The registration requirement pursuant to section 290.006 is stricken. On remand, the People may retry count 2. The clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, Acting P. J.

We concur:

CODY, J.          McKAIG, J.*

* Judge of Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jonathan J. Kline and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.