[Crim. No. 15937. Fourth Dist., Div. One. June 20, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
RIC KIYOSHI KUSUMOTO, Defendant and Appellant.

COUNSEL

Thomas S. Szakall, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jesus Rodriguez and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Ric Kiyoshi Kusumoto appeals from a judgment of conviction entered after a jury found him guilty of two counts of lewd

and lascivious acts upon a child (Pen. Code, § 288, subd. (a)), two counts of rape by object (Pen. Code, § 289, subd. (a)), and one count of child molestation (Pen. Code, § 647a).[1] He was sentenced to a term of 12 years in prison on the section 289(a) counts. Sentence on the two section 288(a) counts was stayed pursuant to section 654.

## I

Thirteen-year-old Jerine and her fifteen-year-old sister Eryine lived with their sister Anrica and her husband, Kusumoto. One afternoon, when Jerine was sleeping on the couch, she awoke to find Kusumoto's hand in her shorts and his finger in her vagina. She cussed him and went into her room. A couple of weeks later, while Jerine was sleeping on the couch late at night, she again awoke to find Kusumoto's hand in her shorts and his finger in her vagina. She went to her room and closed the door.[2]

## II

Penal Code section 289(a) provides: "Every person who causes the penetration, however, slight, of the genital or anal openings of another person, by any foreign object, substance, instrument, or device *when the act is accomplished* against the victim's will *by means of force,* violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison for three, six, or eight years." (Italics added.)

Kusumoto does not challenge his conviction on the lewd and lascivious acts (§ 288(a)) and child molestation (§ 647a) charges. He argues, however, that the section 289(a) charges against him should have been dismissed (§ 1118) because there was insufficient evidence of "force." He admits that the evidence is sufficient to demonstrate he took advantage of Jerine's being asleep to commit the acts, but he contends that because he did not physically subdue Jerine or threaten her, the insertion of his finger into her vagina was not "by means of force" as required by the statute.

To buttress his position, Kusumoto refers to the jury instructions on the section 289(a) charges. Defining the element of force, the court instructed the jury it was required to find "that the penetration was caused by the use

---

[1] All subsequent statutory references are to the Penal Code unless otherwise indicated. Referring to sections 261, 286, 288, 288a and 289, we omit repetitive use of the word "subdivision."

[2] An unrelated and less serious incident involving Eryine formed the basis for the section 647a conviction.

of force sufficient to accomplish the act . . . ."[3] Kusumoto argues that this instruction effectively removed the additional element of force from the crime since, by definition, the act of penetration cannot be committed without some force sufficient to satisfy the instructional requirement.

### A

Section 289(a) was enacted in 1978 to correct a deficiency in existing law. Prior to that time, forcible rape, oral copulation and sodomy were subject to fairly severe penalties (between two and five years in prison) but the forcible insertion of objects into a victim's vagina or anus was punishable only as a battery. (§ 242.) According to a report prepared for the Senate Committee on Judiciary, section 289(a) was intended to correct the discrepancy by making the punishment for forcible rape-by-object the same as that for rape. In 1980, Assembly Bill No. 3420 was passed in order to increase the penalties for object rape to correspond to those for all other forcible sexual assaults. (Stats. 1980, ch. 409, § 1, p. 798.)

### B

We begin by comparing section 289 with those statutes which define the other sexually assaultive crimes to determine if they offer any clues as to whether the Legislature intended the concept of "force" to encompass those situations in which the defendant penetrates the victim while asleep. We must first, however, focus on section 289 in its entirety. In addition to subdivision (a) which defines forcible object rape, subdivision (b) also defines a form of object rape distinguished by the victim's inability to give consent: "Every person who causes the penetration, however slight, of the genital or anal openings of another person by any foreign object, substance, instrument, or device when the victim is at the time incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent, and this is known or reasonably should be known to the person committing the act, for the purpose of sexual arousal, gratifica-

---

[3]The full jury instruction reads as follows: "The defendant is charged in Counts 2 and 4 with 289 of the Penal Code. Every person who causes penetration, however slight, of the genital opening of another person, against the will of that person, by any foreign object, substance, instrument or device, by the use of force for the purpose of sexual arousal, gratification or abuse is guilty of the crime of violation of Section 289 of the Penal Code.

"In order to prove the commission of the crime, each of the following elements must be proved—

". . . . . . . . . . . . . . . . . . . . .

"That a person's genital opening was penetrated by a foreign object, substance, instrument or device; that the penetration was against the will of such person; that the penetration was caused by the use of force sufficient to accomplish the act; that the penetration was done for the purpose and specific intent to cause sexual gratification, arousal or abuse."

tion, or abuse, shall be punished by imprisonment in the state prison, or in a county jail for a period of not more than one year."

As distinguished from object rape, which has only two subparts,[4] the other sexual assault crimes specify at least one additional means by which those crimes can be committed. For instance, rape may be by force or fear (§ 261(2)) or where the victim is incapable of giving consent (§ 261(1)). In addition, subdivision (4) of section 261 provides that a rape is committed where the defendant engages in sexual intercourse with the victim who "is at the time unconscious of the nature of the act, and this is known to the accused." Similarly, sodomy and oral copulation may be "by means of force" (§ 286(c); § 288a(c)) or where the victim is incapable of giving consent (§ 286(g); § 288a(g)), but are also committed where "the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, . . ." (§ 286(f); § 288a(f).) It is worthy of note that while the rape of an unconscious victim is punished the same as any other type of rape (a base term of three, six or eight years (§ 264)), oral copulation or sodomy performed on an unconscious victim is punished much less severely (maximum of sixteen months, two or three years (§§ 286(f); 288a(f); 18)) than sodomy or oral copulation by means of force.

■ We are thus faced with a situation in which, as to the three general sexual assault crimes other than rape-by-object, the Legislature has enacted a specific subdivision to deal with the performance of prohibited acts on a sleeping or otherwise unconscious victim. As to those statutes, we can conclude that the Legislature did not intend the performance of acts on a sleeping victim to be found to be by means of *force* as that term appears in other subdivisions of those same statutes. ■ We must determine whether the term "force" as it appears in section 289 was intended to have a broader meaning than it does in sections 261, 286 and 288a.

### C

We have considered that as a historical matter, the concept of force in the law of rape has no commonly understood genesis or clearly defined meaning. One court of appeal recently commented, "At common law, rape was defined as unlawful sexual intercourse with a female person against her will or consent. (Perkins & Boyce, [Criminal Law (3d ed. 1982)] pp. 197-199.) Historically, some courts included proof of substantial force as an element of the crime of rape. (*Id.* at pp. 210-212.) According to Perkins and Boyce, the better view has been to require a showing of only such force as is

---

[4]Subdivision (c) of section 289 merely defines "foreign object, substance, instrument, or device" to include "any part of the body except a sexual organ."

necessary reasonably to demonstrate that an act of intercourse has been undertaken without the victim's consent. (*Id.,* at p. 211.) . . . [¶] . . . [T]he law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that 'force' cause physical harm. Rather, in this scenario, 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will." (*People* v. *Cicero* (1984) 157 Cal.App.3d 465, 475 [204 Cal.Rptr. 582].) Were we interpreting a common law crime in the present case, we would have no trouble concluding that the essential element of rape and other sexual assaults is the lack of consent and that the concept of force "plays merely a supporting evidentiary role." We deal here, however, with a statute passed by the Legislature which requires that the act be accomplished "against the victim's will by means of force . . . ." An interpretation of the statute which would require "force" only as evidentiary proof of the lack of consent would effectively render the "by means of force" clause superfluous.[5] As one commentator explained in the context of analyzing rape statutes in general: "The act of sexual intercourse must be accomplished . . . without [the victim's] consent. . . . [¶] Conceptually, 'lack of consent' results either from the defendant's use of force or threatened force, or from the female's incapacity to consent. . . . [¶] If the defendant uses force or threatened force to accomplish the act of sexual intercourse, there is no consent. *The force to which reference is made is not the force inherent in the act of penetration but the force used or threatened to overcome or prevent resistance by the female.*" (3 Wharton, Criminal Law (14th ed. 1980) §§ 287-288, pp. 30-34, fns. omitted.)

We see other indications that when the Legislature used the term "force" in section 289(a), it intended that the term have the same meaning as it does in sections 261(2), 286(c) and 288a(c). For instance, section 292 specifies certain crimes the Legislature considers to involve "an act of violence," thus severely limiting the availability of bail under the provisions of article I, section 12 of the California Constitution. Included among these crimes are sections 261(2), 286(c), 288a(c) *and subdivision (a) of section 289.* Absent from the list are any of the subdivisions which proscribe sexual assaults on victims "unconscious" of the nature of the act. By including section 289(a) among the crimes which involve "an act of violence," the Legislature has strongly indicated it views the concept of "force" in that

---

[5] We note that even in *Cicero,* the court required not only that the act be against the victim's will but also that "the defendant, use[] physical force substantially different from or substantially greater than that necessary to accomplish the lewd act itself." (157 Cal.App.3d at p. 474.)

section to mean something qualitatively different than merely the victim's lack of consent.

We recognize that attempting to impose a consistent logic on a set of statutes passed at different times with different motivations is a bit like trying to take a formal portrait of a group of toddlers. There may be an inherent contradiction in terms. We suspect that the only "logical" explanation for the way in which section 289 was drafted is that the drafters simply didn't consider how to treat the rape-by-object of an unconscious victim.[6] We assume that had such issue been considered, the Legislature would have found such conduct as reprehensible as we do. Nonetheless, even if we could presume an intent to make the act punishable, we have no way of knowing whether such conduct would have been deemed more similar to rape (§ 261(4): imprisonment for three-six-eight years) or sodomy and oral copulation (§§ 286(f) and 288a(f): wobbler—sixteen mos.-two-three-year imprisonment or one year in county jail).[7]

In the final analysis we have no question here that the defendant perpetrated an act to which the victim did not consent. But given the entire statutory scheme, the requirement of "force" in section 289(a) simply cannot be stretched to encompass the type of conduct involved in this case, where the victim was penetrated while asleep and where the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself. It is fortunate in the present case that because the victim was under the age of 14, Kusumoto was convicted of a crime which provides for the same range of prison sentences (§ 288(a): 3-6-8 years) as does section 289(a). We assume the Legislature will promptly take steps to express and/or clarify its intent with respect to object rapes on unconscious victims to avoid problems in future prosecutions. We must conclude, however, that the evidence was insufficient to demonstrate that Kusumoto committed the offense of object rape "by means of force" as that crime is defined in section 289(a).

### III

Twice Kusumoto's court-appointed attorney made a motion to the court to be relieved of his duties. On both occasions, the motion was denied without explanation. The attorney, with whom Kusumoto declares he had a irreconcilable personality conflict, allegedly conducted Kusumoto's plea ne-

---

[6] We note in this context that the legislative omission evident in section 289 also appears in the definition of the crime of sexual battery in section 243.4.

[7] If one were to focus on the potential harm to the victim, it could be argued that the danger of pregnancy makes rape qualitatively more serious than the other three types of sexual assaults.

gotiation. On appeal, Kusumoto claims he was offered the chance to plea to one felony with probation and custody in county jail not in excess of one year. He alleges he rejected this plea bargain because his attorney did not adequately explain to him the possible consequences of conviction on the offenses charged. Had he realized he could be sentenced to prison for 12 years if convicted on the charges alleged, he would have accepted the plea bargain. Kusumoto argues that his attorney's failure to advise him of the possible consequences of proceeding to trial denied him the effective assistance of counsel.

The record on appeal preserves no evidence of a plea bargain offered, of plea negotiations, or of Kusumoto's rejection of an offered plea. Nor does it preserve evidence of whether or how Kusumoto's attorney conducted plea negotiations. ▇ To prove a claim of ineffective assistance of counsel, Kusumoto must show his attorney failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) ▇ Kusumoto has not met this burden. We have no basis on this record for evaluation of his claim. Since, in all likelihood, there is no written record of the plea offered or of the plea negotiations which led to its rejection, Kusumoto's appropriate remedy is a petition for habeas corpus, the filing of which may result in a hearing at which evidence on these matters may be heard.

### DISPOSITION

The judgment of conviction on counts 2 and 4 is reversed. In all other respects, the judgment is affirmed. The case is remanded for resentencing.

Lewis, J., and Adams, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.