Filed 10/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>SCOTT McCANN,<br><br>      Defendant and Respondent. | A156467<br><br>(San Francisco County<br>Super. Ct. No. SCN222517) |

Defendant Scott McCann was held to answer on a charge of forcible sexual penetration by a foreign object (Pen. Code,[1] § 289, subd. (a)(1)(A); count 1), and other offenses arising from his attack of the victim in McCann's hotel room. Preliminary hearing testimony showed that McCann and the victim had been drinking before the incident, and the victim had no memory of what happened to him. After the attack, the victim appeared "beat up pretty bad"; his injuries included a broken nose, ruptured bladder, and torn rectum, and he was required to use a colostomy bag for months afterward.

The trial court granted McCann's section 995 motion to dismiss count 1, finding no evidence that the victim's will was overcome by physical force, and the People appeal. We conclude there was sufficient cause to hold McCann to answer to the charge of forcible sexual penetration, and therefore we reverse.

---

[1] Further statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*Felony Complaint*

The San Francisco County District Attorney filed a six-count felony complaint charging McCann with forcible sexual penetration by a foreign object, and other offenses arising from an incident that occurred on June 13, 2013, at the Arlington Hotel in San Francisco.[2]

*Preliminary Hearing*

The trial court held a preliminary hearing at which two police officers and the victim testified.

McCann and the victim, Kevin C., both lived at the Arlington Hotel and were "drinking buddies." On June 13, 2013, Kevin went to McCann's room and they drank vodka and beer. Kevin testified he could "just recall the morning" of that day. The next thing Kevin remembered was regaining consciousness in a hospital. Hotel resident Barbara Jean Polk reported to a police officer that she spent part of the afternoon of June 13 drinking with McCann and Kevin in McCann's room. When Polk left them in the late afternoon, McCann and Kevin were drunk but Kevin had no visible injuries.

Security camera footage of the second-floor hallway in the Arlington Hotel recorded that day showed Kevin being pushed or thrown out of McCann's room and then lying on the floor in the hallway around 6:45 p.m. Another hotel resident saw Kevin and notified the front desk there was a body in the second-floor hallway. The video footage showed McCann come out of his room and then disappear from camera view as Kevin

---

[2] McCann was charged with sexual penetration of an unconscious person (§ 289, subd. (d)(1); count 2), sexual penetration by a foreign object of a victim who was prevented from resisting by an intoxicating and anesthetic substance (§ 289, subd. (e); count 3), attempted murder (§§ 664, 187, subd. (a); count 4), battery with serious bodily injury (§ 243, subd. (d); count 5), and assault with a deadly weapon (§ 245, subd. (a)(1); count 6). It was alleged the attempted murder was willful, deliberated, and premediated. As to counts 1 through 4 and 6, it was alleged defendant personally inflicted great bodily injury (§§ 667.61, subd. (d)(6), 12022.7, subd. (a)), and as to counts 1 through 5, it was alleged he personally used a dangerous and deadly weapon (§§ 667.61, subd. (e)(3), 12022, subd. (b)(1), 12022.3, subd. (a), 12022.5, 12022.53).

2

continued to lie on the hallway floor. Paramedics and police soon arrived at the scene, and Kevin was taken to the hospital. McCann reentered his room about 11 minutes after the paramedics arrived.

A police officer who saw Kevin in the intensive care unit of the hospital that night testified Kevin "was really beat up pretty bad" with his right eye closed and discolored. Kevin was unaware of his injuries until his doctor told him what happened, and he remained in the hospital until June 26. He sustained a subdural hematoma, a broken nose, bladder perforation and rupture, and a rectal tear, and he had various "significant surgeries" during his hospital stay. He had a colostomy bag and a catheter for about five months, and he was in the hospital again for five days to have the colostomy closed.

The day after the incident, Brenda Bowman was in McCann's room and saw him mopping up blood.[3] McCann told her he had put a wooden broom stick or handle in Kevin's anus.

On June 24, San Francisco Police Officer Joseph Clemente found McCann in a room on the third floor of the Arlington Hotel (not his own room). McCann was intoxicated and stumbling, and he looked angry. He volunteered to the officer, "I didn't rape him. I ain't no faggot. I cleaned my room. You're not going to find any blood or nothing." Clemente had not yet asked McCann a question.

On August 1, Officer David Almaguer arranged for Kevin to have a recorded pretext conversation with McCann. During the recorded conversation, McCann said what he had done was bad. He told Kevin he put a jagged steel bar in his rectum. McCann also said he whacked him over the head.

After the pretext conversation, McCann was arrested and questioned by Almaguer. McCann told the officer he and Kevin used to be friends and they often drank together. On June 13, they were drinking in McCann's room. But McCann was angry with Kevin that day. He believed Kevin took advantage of his hospitality; Kevin would pass out on

---

[3] According to McCann, Bowman was his girlfriend. Bowman referred to McCann as a friend.

the floor, and he had urinated on the floor and broken things in McCann's room. McCann indicated that he did not want to recall what happened on June 13, but he had kicked Kevin so hard he broke his own foot. McCann took responsibility for Kevin's injuries, but he did not admit to inserting anything in his anus. McCann said he was not gay and the things Almaguer was asking about were gay. Toward the end of the interview with the officer, McCann said that he had told Kevin, "Dude, I think I fucked you up."

Kevin testified that he would never consent to having anything shoved up his rectum.

Following the preliminary hearing, McCann was held to answer on all counts and enhancements except the allegation that the attempted murder was willful, deliberate, and premeditated.

*First Amended Information*

On August 14, 2018, the People filed a first amended information which included the allegation that the attempted murder was willful, deliberate, and premeditated.

*Section 995 Motion and Ruling*

McCann filed a section 995 motion to dismiss counts 1 and 4, and the premeditation and deliberation allegation in count 4.

The trial court granted the motion in part, dismissing count 1 and the premeditation allegation attached to count 4, and denied the motion in part, finding probable cause to hold defendant on the attempted murder charge (count 4). The trial court believed that forcible sexual penetration requires a showing of force "beyond that which was necessary to accomplish the act itself," citing *People v. Kusumoto* (1985) 169 Cal.App.3d 487 (*Kusumoto*).

## DISCUSSION

The People appeal only the trial court's dismissal of count 1, sexual penetration by a foreign object by means of force or violence.

4

A.      *Standard of Review*

"A magistrate's function at a felony preliminary hearing is to determine whether or not there is 'sufficient cause' to believe defendant guilty of the charged offense. [Citations.]  The term 'sufficient cause' means ' "reasonable and probable cause" ' or 'a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'  [Citations.] . . . 'A charge will not be dismissed for lack of probable cause "if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." ' " (*People v. Dawson* (2009) 172 Cal.App.4th 1073, 1087.)  "Evidence that will justify a prosecution need not be sufficient to support a conviction." (*Rideout v. Superior Court of Santa Clara County* (1967) 67 Cal.2d 471, 474.)

In reviewing a decision on a section 995 motion, we disregard the ruling of the trial court and review directly the determination of the magistrate.  (*People v. Laiwa* (1983) 34 Cal.3d 711, 718.)  " '[E]very legitimate factual inference must be drawn to uphold the magistrate's decision.' "  [Citations.]  If there is some evidence to support the magistrate's order, the reviewing court will not inquire into its sufficiency." (*People v. Scott* (1999) 76 Cal.App.4th 411, 416.)

B.      *The Force Required for Forcible Sexual Penetration*

Section 289, subdivision (a)(1)(A) (§ 289(a)(1)(A)), makes it a crime to commit "an act of sexual penetration when the act is *accomplished against the victim's will by means of force*, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."[4]  (Italics added.)

---

[4] "Sexual penetration" is defined as "the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).)  The phrase "[f]oreign object, substance, instrument, or device" includes "any part of the body, except a sexual organ" and the term "[u]nknown object" includes "any foreign object, substance, instrument, or device, or any part of the body, including a penis, when it is not known whether

5

The language "accomplished against a person's will by means of force . . ." is the same language used in section 261, which defines rape to include "sexual intercourse accomplished with a person not the spouse of the perpetrator" "[w]here it is *accomplished against a person's will by means of force*, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2), italics added.)

In *People v. Griffin* (2004) 33 Cal.4th 1015 (*Griffin*), our high court examined the force necessary for forcible rape under section 261, subdivision (a)(2), rejecting the argument that the offense requires the use of physical force substantially different from or substantially greater than that necessary to accomplish an act of consensual sexual intercourse. (*Id*. at pp. 1018–1019.) "To the contrary," the court explained, "it has long been recognized that 'in order to establish force within the meaning of section 261, subdivision [(a)](2), the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].' " (*Id*. at pp. 1023–1024.)

The *Griffin* court reasoned, "When two adults engage in *consensual* sexual intercourse, whether with or without physical force greater than that normally required to accomplish an act of sexual intercourse, the forcible rape statute is not implicated. *The gravamen of the crime of forcible rape is a sexual penetration accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury.* As reflected in the surveyed case law, in a forcible rape prosecution *the jury determines whether the use of force served to overcome the will of the victim* to thwart or resist the attack, *not* whether the use of such force physically facilitated sexual penetration or prevented the victim from physically resisting her attacker. The Legislature has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law

penetration was by a penis or by a foreign object, substance, instrument, or device, or by any other part of the body." (*Id*., subd. (k)(2) and (3).)

6

suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." (*Griffin*, *supra*, 33 Cal.4th at p. 1027, italics added.)

Courts have applied *Griffin*'s interpretation of "force" to section 289(a)(1)(A), the statute at issue here. (E.g., *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072; *In re Asencio* (2008) 166 Cal.App.4th 1195, 1200 (*Asencio*).) Thus, the force required for forcible sexual penetration in violation of section 289(a)(1)(A), is "sufficient force to overcome [the victim's] will." (*Thomas*, at p. 1072.)

C.    *Analysis*

1.    <u>*Kusumoto* Was Implicitly Disapproved by *Griffin*</u>

Initially, the People contend the trial court was mistaken when it stated that forcible sexual penetration requires a showing of force "beyond that which was necessary to accomplish the act itself." McCann concedes on appeal that this is not the standard of force required to prove a violation of section 289(a)(1)(A), and the parties now agree *Griffin* sets forth the applicable standard of force required to prove forcible sexual penetration. Although we are not generally concerned with the trial court's ruling or reasoning on appeal of a section 995 motion (*People v. Laiwa*, *supra*, 34 Cal.3d at p. 718), we address the point briefly.

The trial court relied on *Kusumoto*, *supra*, 169 Cal.App.3d 487, a case urged upon it by defense counsel in support of the section 995 motion. On appeal, however, McCann concedes that *Kusumoto*'s approach has been disapproved by *Griffin*. McCann's concession is correct. In *Kusumoto*, defendant Kusumoto was convicted of forcible sexual penetration (described as "rape by object") in violation of section 289 after he placed his finger in the 13-year-old victim's vagina while the victim was asleep. Kusumoto argued on appeal that there was insufficient evidence of "force" "because he did not physically subdue [the victim] or threaten her." (*Id*. at p. 490.) The appellate court agreed there was insufficient evidence of force, reasoning, "[T]he requirement of 'force' in section 289(a) simply cannot be stretched to encompass the type of conduct involved in this case, where the victim was penetrated while asleep and *where the*

7

*victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself*." (*Id*. at p. 494, italics added.) The trial court here quoted this statement in *Kusumoto* in its order granting McCann's section 995 motion. But we have seen that the italicized portion of the quote from *Kusumoto* is *not* the standard for force in rape and sexual penetration cases. The *Griffin* court held it was error to apply a " 'substantially different from or substantially greater' definition of force . . . to this forcible rape case." (*Griffin*, *supra*, 33 Cal.4th at p. 1028.) And *Griffin*'s interpretation of "force" applies to forcible sexual penetration in violation of section 289(a)(1)(A). (*Asencio*, *supra*, 166 Cal.App.4th at p. 1200.) To the extent *Kusumoto* held that forcible rape (and by extension, forcible sexual penetration as charged here) requires the use of "force substantially different from or greater than that necessary to accomplish the act itself," (*Kusumoto*, at p. 494) that holding was clearly rejected by our high court in *Griffin*. Thus, it was error for the trial court to rely on *Kusumoto*'s standard of force in deciding whether there was sufficient evidence of force to support the charge of forcible sexual penetration in this case.

      2.     <u>McCann Was Properly Held to Answer on Count 1</u>

The People contend there was reasonable cause to believe McCann forcibly penetrated the victim against his will based on (1) Kevin's testimony that he did not consent and would not consent to having anything inserted in his anus, (2) McCann's admissions to various witnesses that he put either a jagged steel bar or a wooden broomstick or handle in Kevin's rectum, that he whacked Kevin over the head, and that he caused Kevin's injuries and kicked him so hard McCann broke his own foot, and (3) the nature of Kevin's injuries. McCann responds that the "sexual penetration of Kevin here was not accomplished by force, but rather, by taking advantage of Kevin's intoxication or unconsciousness."

We believe the People have the better argument. McCann admitted he "whacked" Kevin over the head and kicked him, and Kevin ended up with a broken nose and black (or at least discolored) eye, as well as injuries to his rectum and bladder. The injuries to Kevin's face and McCann's admission that he battered Kevin could be viewed as

8

circumstantial evidence that Kevin rebuffed McCann's efforts to engage in sexual penetration and that McCann used force to accomplish sexual penetration against Kevin's will. Considered together with the evidence of injuries to Kevin's rectum and bladder, McCann's admissions that he put a broom stick or handle or steel bar in Kevin's anus, and Kevin's testimony that he would never consent to having anything shoved up his rectum, a person of ordinary caution or prudence could conscientiously entertain a strong suspicion that McCann was guilty of forcible sexual penetration.

McCann points out that Kevin has no memory of the incident and suggests this means Kevin was unconscious (that is, passed out drunk) when McCann sexually assaulted him, but we do not think such an inference is required. Although Kevin testified he could not remember anything that happened on June 13 after the morning, hotel resident Polk observed him drinking with McCann in the late afternoon. Since Kevin has no memory of the afternoon when he was observed drinking, it cannot be said that his lack of memory of a period of time necessarily means he was passed out during that period.

Here, since there was a rational ground for believing McCann committed forcible sexual penetration in violation of section 289(a)(1)(A), he was properly held to answer on that charge, and the trial court erred in dismissing count 1 of the first amended information.

## DISPOSITION

The order granting McCann's section 995 motion as to count 1 (forcible sexual penetration in violation of section 289(a)(1)(A)) and dismissing the charge is reversed. The trial court is directed to enter a new order denying the motion as to count 1.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.


A156467, *People v. McCann*

Trial Court:  Superior Court of San Francisco County


Trial Judge:  Hon. Christopher C. Hite


Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Laurence K. Sullivan and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Appellant

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Respondent

A156467, *People v. McCann*