
Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## NORMANDY ILAGAN PENAFLORIDA,
Defendant-Appellant.

Supreme Court Case No. CRA22-001
Superior Court Case No. CF0734-18

## OPINION

## Cite as: 2022 Guam 14

Appeal from the Superior Court of Guam
Argued and submitted on August 11, 2022
Via Zoom video conference

Appearing for Defendant-Appellant:
Brian E. Kegerreis, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Woodrow D. Pengelly, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913


E-Received
12/23/2022 4:41:07 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**TORRES, J.:**

[1]     Defendant-Appellant Normandy Ilagan Penaflorida appeals his conviction for Fourth Degree Criminal Sexual Conduct (As a Misdemeanor).  On appeal, Penaflorida asserts that the government failed to provide sufficient evidence that the element of force or coercion was used to accomplish sexual contact under 9 GCA § 25.30(a)(1).  We affirm the trial court's judgment of conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     In December 2018, the then-fourteen-year-old victim, A.C.C., reported that Penaflorida had inappropriately touched her.  Penaflorida was charged with Second Degree Criminal Sexual Conduct ("CSC") (As a First Degree Felony), and Fourth Degree CSC (As a Misdemeanor).

[3]     A.C.C. testified that, on the day of the incident, she was in the living room when Penaflorida—her uncle—began "wiggling the door" to be let in after she greeted him.  Transcript ("Tr.") at 99 (Jury Trial, July 26, 2021).  A.C.C.'s father, who suffers from kidney failure, was asleep in another room.  A.C.C. testified that, after she let Penaflorida in, Penaflorida hugged her for about 20-30 seconds and that his hand was on her buttocks—specifically, on her "butt cheek"—during that hug. *Id.* at 99-100.  A.C.C. testified that when Penaflorida put his hand on her buttocks, she "didn't know what to think," *id.* at 99, and that it made her "feel really shocked and uncomfortable," *id.* at 102.  When asked "what was happening with [her] upper body" during the hug, A.C.C. testified, "Nothing, I was just really shocked." *Id.*  She said that before releasing her, Penaflorida told her, "You are sexy." *Id.* at 99.  A.C.C. then testified that before leaving, Penaflorida asked her not to tell her father, and that when she went to kiss Penaflorida goodbye on

the cheek out of respect, he kissed her on the lips. When asked how she felt when Penaflorida kissed her, A.C.C. testified, "I didn't know what to think. I was just really shocked." *Id.* at 100.

[4]     Guam Police Department Officer Donny T. Pangelinan also testified to details Penaflorida shared in an interview after being read his *Miranda* rights. Pangelinan testified that Penaflorida asked "if he was going to receive a long jail time." *Id.* at 55. Pangelinan testified that Penaflorida said that "he [knew he was] in trouble, because his niece, [A.C.C.], was angry about him kissing her." *Id.* at 56. Pangelinan testified that Penaflorida admitted to saying A.C.C. looked sexy, and that Penaflorida said he "accidentally rested his left hand right above [A.C.C.'s] butt area" for "[a] few seconds" before "he moved it away and apologized." *Id.* at 57. Finally, Pangelinan testified that, after asking Penaflorida why he instructed A.C.C. not to inform her father, Penaflorida said it was "because he knew what he did was wrong." *Id.* at 58.

[5]     The jury found Penaflorida not guilty of Second Degree CSC and guilty of Fourth Degree CSC ("CSC IV"). Penaflorida was sentenced to one year of imprisonment with all but 60 days suspended and with credit for time served. He was ordered to pay a fine, found liable for restitution in an amount to be determined at a later hearing, and ordered to perform community service. Penaflorida timely appealed his conviction.

## II.  JURISDICTION

[6]     This court has jurisdiction to hear appeals from a final judgment of the Superior Court under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw current through Pub. L. 117-240), 7 GCA §§ 3107 and 3108(a) (2005), and 8 GCA § 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[7]     "Where a defendant raised the issue of sufficiency of the evidence by a motion for judgment of acquittal, we review the trial court's denial of the motion *de novo*." *People v. Song*,

2012 Guam 21 ¶ 26 (citing *People v. Anastacio*, 2010 Guam 18 ¶ 10). A sufficiency-of-the-evidence analysis requires us to "review the evidence presented at trial in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This is a 'highly deferential standard of review.'" *Id.* (internal citations omitted). "[T]he People 'must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Id.* ¶ 28 (quoting *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)). "It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Id.* ¶ 29 (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

## IV. ANALYSIS

**[8]** Under 9 GCA § 25.30, a person is guilty of CSC IV "if he or she engages in sexual contact with another person and if . . . (1) force or coercion is used to accomplish the sexual contact . . . ." 9 GCA § 25.30(a)(1) (2005).[1] Under 9 GCA § 25.10, force or coercion includes, but is not limited to, a non-exhaustive list of circumstances, the most pertinent of which to this case are: "(A) when the actor overcomes the victim through the actual application of physical force or physical

---

[1] At the time of the incident underlying this case, 9 GCA § 25.30(a) provided two alternative circumstances that would constitute CSC IV: when "(1) force or coercion is used to accomplish the sexual contact," or when "(2) the actor knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless." 9 GCA § 25.30(a)(1)-(2) (2005). Earlier this year, the statute was amended to add a third alternative: when "(3) the victim is at least fourteen (14) years of age and under sixteen (16) years of age." 9 GCA § 25.30(a)(3) (added by Guam Pub. L. 36-079:1 (Feb. 9, 2022)). The penalty portion of the statute was also amended to allow for a reduction from a felony of the third degree to a misdemeanor only when the defendant is a first-time offender and the victim is at least 18 years old, *see* 9 GCA § 25.30(b) (as amended by Guam Pub. L. 36-079:1 (Feb. 9, 2022)); the prior statute allowed such a reduction for all first-time offenders regardless of the age of the victim, *see* 9 GCA § 25.30(b) (2005). The statute was further amended a few months later to change the phrase "mentally defective" to "mentally impaired." 9 GCA § 25.30(a)(2) (as amended by Guam Pub. L. 36-101:6 (June 15, 2022)). While these amendments are irrelevant to this appeal because they predated the sexual contact underlying Penaflorida's conviction, the court notes the recent developments in the statute, as the first set of amendments became law a week after Penaflorida filed this appeal.

violence;" and "(E) when the actor, through concealment or by the element of surprise, is able to overcome the victim." 9 GCA § 25.10(a)(2)(A), (E) (2005).

[9] Penaflorida argues that the trial court's denial of his motion for judgment of acquittal was improper because Plaintiff-Appellee People of Guam ("the People") did not satisfy the "force or coercion" element of CSC IV under 9 GCA §§ 25.30 and 25.10. Appellant's Br. at 4-9 (May 2, 2022). Specifically, Penaflorida states that A.C.C. did not present evidence that Penaflorida used force or coercion in accomplishing the alleged sexual contact. *Id.* at 5. He claims a lack of force or coercion based on this court's holding in *People v. Tenorio*, 2007 Guam 19, and the Michigan cases cited there. Appellant's Br. at 7-9.

[10] In *Tenorio*, we cited to *People v. Kusumoto*, 215 Cal. Rptr. 347 (1985), a California Court of Appeal case which held that the force required in a California rape statute was not met where "the victim's will was not overcome by any physical force substantially different from or greater than that necessary to accomplish the act itself." *Tenorio*, 2007 Guam 19 ¶ 44 (quoting *Kusumoto*, 215 Cal. Rptr. at 351). The *Kusumoto* court cited Wharton on Criminal law for the proposition that force is not the force inherent in the sexual act itself, but the force used or threatened to prevent or overcome resistance. *Kusumoto*, 215 Cal. Rptr. at 350.

[11] We recognize that *Kusumoto*'s test for "force" in forcible rape cases is no longer good law. The California Supreme Court implicitly disapproved the holding in *Kusumoto* in *People v. Griffin*, 94 P.3d 1089 (Cal. 2004). In *Griffin*, the court examined the force necessary for forcible rape under California law. *Id.* at 1093. The term "force" in the California rape statute was not explicitly defined. *Id. Griffin* rejected the argument that the offense requires the use of physical force "substantially different from or substantially greater than" that necessary to accomplish the act itself. *Id.* at 1094. "To the contrary," the court explained, "it has long been recognized that 'in

order to establish force within the meaning of [California's forcible rape statute], the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the [victim].'" *Id.* at 1094 (second alteration in original) (quoting *People v. Young*, 235 Cal. Rptr. 361, 366 (Ct. App. 1987)). The *Griffin* court explained:

> When two adults engage in *consensual* sexual intercourse, whether with or without physical force greater than that normally required to accomplish an act of sexual intercourse, the forcible rape statute is not implicated. Instead, the gravamen of the crime of forcible rape is a sexual penetration *accomplished against the victim's will* by means of force . . . ."

*Id.* at 1096.

[12]    The *Griffin* court did not explicitly cite *Kusumoto* when rejecting the "substantially different from or substantially greater than" definition of force in forcible rape cases. Instead, it cited *People v. Cicero*, 204 Cal. Rptr. 582 (Ct. App. 1984), a case from a California Court of Appeal decided a year before *Kusumoto*, as *Cicero* was the first case to articulate the "substantially different from or substantially greater than" definition of force and was the case upon which the lower court principally relied when it reversed Griffin's conviction.[2] *Griffin*, 94 P.3d at 1091, 1095. Recently, in *People v. McCann*, 254 Cal. Rptr. 3d 51, 55-57 (Ct. App. 2019), the California Court of Appeal recognized that *Kusumoto*'s use of the "substantially different from or substantially greater than" definition of "force" in forcible rape cases was implicitly disapproved by *Griffin*.

---

[2] *Griffin* did not reject the *Cicero* definition of force in all cases. Rather, the *Griffin* court distinguished the type of cases in which *Cicero*'s definition was meant to apply. *Griffin*, 94 P.3d at 1096-97. *Cicero* involved the crime of commission of a lewd act by force upon a child under the age of 14. 204 Cal. Rptr. at 586. *Griffin* recognized the reasoning behind *Cicero*'s application of a "substantially different from or substantially greater than" definition of force in lewd act prosecutions and explained why such a definition does not apply in forcible rape cases. *Griffin*, 94 P.3d at 1096-97.

**[13]**     In *Tenorio*, this court examined the Michigan Supreme Court case of *People v. Carlson*, 644 N.W.2d 704 (Mich. 2002) (per curiam), through the lens of *Kusumoto*. This court noted that the *Carlson* court rejected *Kusumoto* and held that the equivalent Michigan statute for CSC III did not require the use of force to "overcome" the victim. *Tenorio*, 2007 Guam 19 ¶ 46 (citing *Carlson*, 644 N.W.2d at 709). This court also stated that the *Carlson* court "did not address the statutory language *requiring* that 'force or coercion' based on actual physical force be sufficient to 'overcome[] the victim.'" *Id.* (alteration in original) (emphasis added) (citing Mich. Comp. Law Ann. § 750.520b(1)(f)(i); 9 GCA § 25.10(a)(2)(A) (2005)). This court ultimately found that "the force used by Tenorio was not sufficient to 'overcome[] the victim,' and was 'nonviolent' and 'incidental to [the] act of sexual penetration.'" *Id.* ¶ 48 (first quoting 9 GCA § 25.10(a)(2)(A) (2005); and then quoting *Carlson*, 644 N.W.2d at 709). We recognize the possible implication in *Tenorio* that the force used must be sufficient to overcome the victim, and we acknowledge that such an implication contradicts the non-exhaustive nature of 9 GCA § 25.10(a)(2)'s list of circumstances demonstrating force or coercion. *See* 9 GCA § 25.10(a)(2) (2005) ("*Force* or *Coercion* includes *but is not limited to* any of the following circumstances: (A) when the actor overcomes the victim . . . ." (third emphasis added)).

**[14]**     To the extent *Tenorio* can be read to suggest that the force used must always be sufficient to "overcome the victim," *see id.* ¶¶ 48-49, we overrule this part of *Tenorio*. While we often treat California case law as persuasive authority because many of our statutes derive from California, *see In re Moylan*, 2021 Guam 15 ¶ 21, our CSC statutes differ from California's and were instead patterned after Michigan's statutes, *see People v. Ehlert*, 2019 Guam 3 ¶ 20 (citing *People v. Cummins*, 2010 Guam 19 ¶ 21). Thus, we look to Michigan cases to aid us in interpreting our CSC statutes. *Id.* Any reliance in *Tenorio* on California case law was misplaced.

**[15]**     Turning now to this appeal, Penaflorida references *Tenorio*'s discussion of *People v. Berlin*, 507 N.W.2d 816, 819 (Mich. Ct. App. 1993) (per curiam), in which the Michigan Court of Appeals held that no force was used when the defendant placed the victim's hand on the defendant's crotch without resistance, and *People v. Patterson*, 410 N.W.2d 733, 734 (Mich. 1987), in which the Michigan Supreme Court held that there was insufficient evidence of physical force when the defendant placed his hand on the victim's underwear but removed it when she turned away. *See* Appellant's Br. at 7. But *Berlin* and *Patterson* were both decided before the amendment of Michigan's CSC IV statute to include concealment and the element of surprise as methods of proving force or coercion. The more relevant Michigan case cited in *Tenorio* is *Carlson*.

**[16]**     In *Carlson*, the court noted that the "force" contemplated in Michigan's CSC III statute "does not mean 'force' as a matter of mere physics." 644 N.W.2d at 709. The court held:

> [T]he requisite "force" for [CSC III] does not encompass nonviolent physical interaction in a mechanical sense that is merely incidental to an act of sexual penetration. Rather, the prohibited "force" encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes.

*Id.*

**[17]**     Several Michigan cases have been decided clarifying the *Carlson* test, particularly as it applies to CSC IV, rather than the CSC III application we used in *Tenorio*.

**[18]**     Of these cases, the most on point is *People v. Witt*, No. 316272, 2014 WL 6066934 (Mich. Ct. App. Nov. 13, 2014) (per curiam). In *Witt*, the Michigan Court of Appeals held that the defendant exerted force as required by CSC IV when he touched the victim on top of and then inside the victim's shorts during a hug. *Id.* at *1. In applying the *Carlson* test to the Michigan CSC IV statute, the *Witt* court held that whether force or coercion exists is determined considering

all the circumstances, *id.* (citing *People v. Brown*, 495 N.W.2d 812, 813 (Mich. Ct. App. 1992)), and that "[t]he actor's 'force' need only be sufficient to induce the victim to submit to the sexual act or to seize control of the victim in a manner to facilitate the accomplishment of the sexual act without regard to the victim's wishes," *id.* (quoting *Carlson*, 644 N.W.2d at 707-09). The *Witt* court held that, viewed in a light most favorable to the prosecution, the victim's testimony showed that the "defendant used the pretext of a hug to seize control of the victim in a manner that facilitated the accomplishment of sexual contact without regard to the victim's wishes." *Id.* at *2. That evidence was found sufficient to support the defendant's two convictions for CSC IV. *Id.*

[19]    Other Michigan cases corroborate this interpretation in CSC IV cases. In *People v. Premo*, the Michigan Court of Appeals held that a teacher who pinched students on the buttocks exerted physical force under CSC IV because "the act of pinching requires 'the actual application of physical force.'" 540 N.W.2d 715, 717 (Mich. Ct. App. 1995). In *People v. Lechner*, the Michigan Court of Appeals held that "[l]ike the act of pinching at issue in *Premo*, defendant's act of grabbing the victim's breasts was 'an act of physical force because it require[d] a person to exert strength or power on another person.'" No. 288569, 2009 WL 3981021, at *1 (Mich. Ct. App. Nov. 19, 2009) (per curiam). The court noted that "[a]lthough defendant claims a 'touch' does not constitute force sufficient for a CSC IV charge, [the court] find[s] that the victim's testimony established that defendant grabbed her breasts . . . , with further clarification that contact . . . was actually made. . . . Contrary to what the [trial] court apparently believed, the 'force' required by the CSC IV statute does not have to 'be so great as to overcome' the victim." *Id.* at *2 (quoting *Carlson*, 644 N.W.2d at 709). As Guam CSC laws are based upon those of Michigan, so, too, do we adopt this interpretation.

**[20]** With these considerations in mind, we find that the evidence is sufficient to satisfy the "force or coercion" element of CSC IV. During direct examination, A.C.C. testified that during the hug, Penaflorida's hand was on her "butt cheek" for 20-30 seconds. Tr. at 100 (Jury Trial, July 26, 2021). She said that during the hug, Penaflorida told her, "You are sexy," and that before he left, Penaflorida asked her not to tell her father. *Id.* at 99. A.C.C. also testified that when she tried to kiss Penaflorida goodbye on the cheek out of respect, he kissed her on the lips. *Id.* A.C.C. said that while Penaflorida's hand was on her buttocks, she "didn't know what to think," *id.*, and that she felt "really shocked and uncomfortable," *id.* at 102. Although some contradictory evidence was presented—e.g., Penaflorida's statements to Officer Pangelinan that Penaflorida "accidentally" placed his hand "above [A.C.C.'s] butt area" and that he thereafter apologized, *id.* at 57—Officer Pangelinan also testified that Penaflorida admitted to telling A.C.C. that she looked sexy, *id.*, said that "he [knew he was] in trouble, because his niece, [A.C.C.], was angry about him kissing her" *id.* at 56, and admitted that he told A.C.C. not to tell her father "because he knew what he did was wrong," *id.* at 58. Viewing the evidence in the light most favorable to the People, a rational trier of fact could have found that Penaflorida used the pretext of a hug to seize control of A.C.C. in order to touch her buttocks, without regard to her wishes, thus satisfying the element of "force or coercion" beyond a reasonable doubt.

**[21]** Finally, we note that throughout his brief, Penaflorida points to inaction on the part of A.C.C. to support his insufficiency claim. *See* Appellant's Br. at 6 ("She did not scream or jump back when the hug occurred."); *id.* at ("There is nowhere in the evidence that A.C.C. screamed, said stop, yelled for help, pushed the Defendant's hand away, or ran away."); *id.* at 8 ("She never did scream, run away, or yell for help."). Penaflorida relies in part on language in *Tenorio* that suggests a lack of evidence of resistance supports a finding of insufficient evidence of force or

coercion. *See* Appellant's Br. at 7-8. However, Guam's CSC statutes—and modern rape reform laws in other jurisdictions—do not require a victim to resist, as such a requirement shifts the focus from the defendant's conduct to the victim's reaction to the sexual contact or penetration. *Cf. State v. Knapp*, 486 P.3d 113, 120-121 (Wash. 2021) (en banc). Title 9 GCA § 25.45 states, "A victim need not resist the actor for a proper prosecution under §§ 25.15 through 25.35." 9 GCA § 25.45 (2005). To the extent *Tenorio* could be read to suggest that absence of evidence of resistance or of an expression of lack of consent supports a finding of insufficient evidence of force or coercion, we clarify that resistance is not required for a finding of guilt under Guam's CSC statutes. *See id.*

**[22]** Viewing the evidence in the light most favorable to the prosecution, we find that a rational jury could find Penaflorida's hug and subsequent touching of A.C.C.'s buttocks to constitute an application of actual force, thereby satisfying the "force or coercion" element of CSC IV.

## V. CONCLUSION

**[23]** The evidence of actual force was sufficient to sustain Penaflorida's criminal sexual conduct conviction. We therefore **AFFIRM** the trial court's judgment of conviction.

|  |  |
|---|---|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice